**IDAHO RURAL COUNCIL, an Idaho corporation, Plaintiff,**

v.

**Jacob BOSMA, Owner and Operator of Grand View Dairy; Henry Bosma, Owner and Operator of Grand View Dairy; Grand View Dairy, a/k/a Bliss Acres; and, Bosma Enterprises, Inc., Defendants.**

**No. CV–99–0581–S–BLW.**

United States District Court, D. Idaho.

June 4, 2001.

1172

Laird J. Lucas, Land & Water Fund of the Rockies, Boise, Marc D. Fink, Charles M. Tebbutt, Western Environmental Law Center, Eugene, OR, for plaintiff.

C. Thomas Arkoosh, Gooding, Lori A. Terry, Preston Gates & Ellis, Seattle, WA, Jerry R. Neal, John Ray Nelson, Preston Gates Ellis, Spokane, WA, for defendants.

MEMORANDUM DECISION
AND ORDER

WINMILL, Chief Judge.

## I. *INTRODUCTION*

Pending before the Court is Defendants' Motion for Summary Judgment (Docket No. 74), Defendants' Motion to Strike Declarations and Exhibits (Docket No. 104), Defendants' Motion in Limine and to Strike the Testimony of Alan Gay (Docket No. 106), Defendants' Motion in Limine and to Strike the Testimony of John Monks (Docket No. 108), and Plaintiff's Motion for a Continuance of the June 11,

2001 Trial Date (Docket No. 113). The Court has heard oral argument and considered the parties' briefing, and now issues the following decision.

## II. *FACTUAL BACKGROUND*

In 1994, the Defendants ("Bosmas") established a substantial dairy operation ("Grand View Dairy" or "the dairy") in an area near Bliss, Idaho, which is directly upgradient from farms operated by the Butler and Walker families. The Butlers and the Walkers are members of Plaintiff Idaho Rural Council ("IRC"), an Idaho non-profit corporation with approximately 500 members throughout Idaho.[1]

On October 7, 1999, IRC sent to the Bosmas a 60-day notice of an alleged violation of provisions of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251–1387. Subsequently, the Bosmas applied for and obtained a National Pollution Discharge Elimination System ("NPDES") permit. On December 9, 1999, IRC filed its Complaint, alleging that the Bosmas have discharged, and continue to discharge, pollutants into waters of the United States. IRC alleges that these discharges reach the waters of the United States through eight different channels:

First, wastewater flows from the dairy into the Old Faulkner Pond that is located on the west boundary of the Bosmas' property. The Pond then discharges into basalt rock and fractured bedrock, which is hydrologically connected to Butler Spring. Thereafter, Butler Spring discharges into Clover Creek, at least seasonally, by means of a head gate.

Second, polluted irrigation water from Grand View's north pivot is sprayed directly into the Northside Canal. Wastewater also enters the Northside Canal through leaks in the mainline serving the north pivot. Additionally, runoff from the southwest edge of the north pivot drains into the Northside Canal. The Northside Canal then discharges into Clover Creek about one mile down stream.

Third, wastewater holding ponds located on Grand View are not lined. The wastewater seeps out of the unlined ponds into groundwater.

Fourth, wastewater from Grand View's holding pond east of the main lagoon also seeps into the groundwater.

Fifth, wastewater runs off from a solid separator into a pond that the Bosmas call their irrigation pond. Wastewater from the pond then seeps into the groundwater.

Sixth, for months, and possibly years, dead animals, dairy waste, construction waste, pharmaceutical materials, and debris have been dumped into and around the Walker Spring. Walker Spring then runs northwest down a ravine into a pond, and then across a pasture into the Northside Canal. The Northside Canal then discharges into Clover Creek.

Seventh, wastewater containing syringes, examination gloves, mastitis tubes, and manure, flows from Grand View's hospital barn to Walker Spring. Walker Spring then runs down a ravine into a pond, across a pasture and into the Northside Canal, which discharges into Clover Creek.

---

**1.** IRC's mission statement states as follows: Idaho Rural Council is committed to preserving the economic well-being of Idaho's family farms and rural communities; to building a more sustainable society which will guarantee positive economic and social choices for present and future generations; and to achieving good stewardship of humanity, land, air and water. We endeavor to educate, organize, and empower farmers and the general public to develop community and state leadership, to build coalitions and to employ only legal ethical means, consistent with democratic principles to achieve this mission.

Eighth, large piles of manure are collected on the dairy and located between the corrals and a liquid containment dike. Wastewater from those manure piles runs off into the Northside Canal, which discharges into Clover Creek.

The Bosmas dispute these allegations. That dispute frames the issues raised by the motions pending before the Court.

## III. DISCUSSION

### A. Defendants' Motion for Summary Judgment

The Court will first address Defendants' Motion for Summary Judgment. The party moving for summary judgment has the burden of proving the absence of any genuine issue of material fact, so that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addition, the evidence must be viewed in the light most favorable to the non-moving party, *see id.* at 255, 106 S.Ct. 2505, and the Court must not make credibility determinations. *See id.*

Once the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-moving party to produce evidence sufficient to support a jury verdict in its favor. *See id.* at 256–57, 106 S.Ct. 2505. In meeting this burden, the non-moving party must go beyond the pleadings and show "by its affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This evidence must be admissible because "only admissible evidence may be considered in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir.1988).

In this case, the Bosmas contend that summary judgment should be granted on

three grounds: (1) the Court lacks subject matter jurisdiction; (2) IRC is unable to establish a viable claim under the Clean Water Act; and (3) the Bosmas are entitled to summary judgment on their affirmative defenses, specifically the "diligent prosecution defense," and a defense based on the equitable doctrine of "unclean hands." The Court will address each in turn.

#### 1. Subject Matter Jurisdiction

Article III of the U.S. Constitution imposes several limitations on the jurisdiction of the federal court to have jurisdiction over a matter before it. Of relevance here are the requirements that, first, the matter be an actual "case or controversy," and second, the case "arise under" a law of the United States. Thus, IRC must first demonstrate the existence of a case or controversy by showing that it had a personal interest in the outcome of the lawsuit at its commencement (i.e., that it has standing), and that its personal stake in the outcome continues (i.e., that its claims are not moot). *See Smith v. University of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir.2000); *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th Cir. 1994). Second, although this case would appear to clearly "arise under" the laws of the United States, since it is based upon the requirements of the Clean Water Act, IRC must show that the CWA regulates the conduct in question.

#### a. Standing

■ Article III of the Constitution confines the jurisdiction of the federal courts to actual cases and controversies. If "the resolution of the issue presented cannot really affect the plaintiff's rights, there is, generally speaking, no case or controversy for the courts to adjudicate; no real relief can be awarded." *Smith v. University of Washington Law School*, 233 F.3d at 1193. Thus, the doctrine of standing serves to

identify those disputes which are appropriately resolved through the judicial process. In a CWA citizen enforcement action, an organization, such as IRC, has standing to bring suit when the following three requirements are met: (1) the organization's members would otherwise have standing to sue in their own right; (2) the interests at stake are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *see also Natural Resources Defense Council v. Southwest Marine, Inc.* 236 F.3d 985, 994 (9th Cir.2000). The Bosmas argue that IRC fails to meet the first requirement—that IRC's individual members do not have standing to sue in their individual capacity—and therefore lacks standing.[2]

■ In order to satisfy Article III's standing requirements in a CWA citizen enforcement action, an individual plaintiff must show that (1) he or she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)); *see also Natural Resources Defense Council v. Southwest Marine, Inc.* 236 F.3d 985, 994 (9th Cir.2000). The party invoking federal jurisdiction bears the burden of establishing these three elements. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ Because these elements are not mere pleading requirements, but, rather, an indispensable part of the plaintiff's case, they must be supported in the same way as any other matter on which a plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. *Id.* General factual allegations of injury resulting from defendant's conduct may suffice at the pleading stage. However, in response to a summary judgment motion, a plaintiff can no longer rest on mere allegations, but must set forth by affidavit or other evidence the specific facts, which will be taken as true for purposes of summary judgment. *Id.* At the final stage, those facts, if controverted, must be supported adequately by the evidence adduced at trial. *Id.*

### (1) *Injury In Fact*

■ The relevant showing of injury in fact is not injury to the environment but injury to the plaintiff. "To insist upon the former rather than the latter as part of the standing inquiry ... is to raise the standing hurdle higher than the necessary showing for success on the merits in an action alleging noncompliance with an NPDES permit." *Laidlaw*, 528 U.S. at 181, 120 S.Ct. 693. "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will

---

**2.** The Bosmas also make a brief argument in their Reply Memorandum that IRC does not meet the second requirement—that the interests at stake are not germane to the organization's purpose. They contend that IRC works to promote sustainable agriculture, to oppose corporate concentration in our food system, and to address factory farm issues, and that IRC is not concerned with opposing water pollution generally because they do not go after small farms. However, IRC need not attempt to stop every polluter in order to show that the issue at stake here is germane to their purpose, which includes, according to IRC's mission statement, achieving good stewardship of humanity, land, air and water.

be lessened' by the challenged activity." *Id.* 120 S.Ct. at 705. Here, IRC contends that several of its members have suffered concrete injuries that have resulted in tangible aesthetic, recreational, and economic harm. For example, IRC alleges that the Butlers no longer use their pond for canoeing, fishing, or swimming. IRC supports these allegations with several affidavits and declarations of members of IRC, including Art and Stacey Butler, Archie Walker, and Christopher Hormel. They assert that the Bosmas' actions directly affected their recreational, aesthetic, and economic interests. As such, IRC has set forth by affidavit and other evidence sufficient specific facts which establish, for purposes of this motion, that their individual members have suffered an injury in fact that is both concrete and particularized.

### (2) *Injury Fairly Traceable to Challenged Action of Defendant*

To establish standing, there also must be a causal connection between the injury and the conduct of which the plaintiff complains. That is, the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. The fairly traceable component examines the causal connection between the assertedly unlawful conduct and the alleged injury. *See Allen v. Wright,* 468 U.S. 737, 753 n. 19, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). "[T]he threshold requirement of 'traceability does not mean that plaintiffs must show to a scientific certainty that defendant's effluent ... caused the precise harm suffered by the plaintiffs' in order to establish standing." *Southwest Marine* 236 F.3d at 995. "To satisfy this requirement, 'rather than pinpointing the origins of particular molecules, a plaintiff must merely show that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged in the specific geographic area of concern .' " *Id.*

In *Southwest Marine,* the Ninth Circuit indicated its agreement with the position taken by the Third Circuit in *Public Interest Research Group v. Powell Duffryn,* 913 F.2d 64, 72 (3d Cir.1990), that the causal connection for standing purposes cannot be too speculative, but need not be so airtight at this stage of the litigation as to demonstrate that the plaintiffs would succeed on the merits. *Id.* In *Powell Duffryn,* the Third Circuit further indicated that plaintiffs need only show that there is a substantial likelihood that defendant's conduct caused plaintiff's harm, and in a CWA case, "this likelihood may be established by showing that a defendant has 1) discharged some pollutant in concentrations greater than allowed by its permit 2) into a waterway in which the plaintiffs have an interest that is or may be adversely affected by the pollutant and that 3) this pollutant causes or contributes to the kinds of injuries alleged by the plaintiffs." *Powell Duffryn,* 913 F.2d at 72.

In this case several witnesses have offered affidavits to the effect that the Bosmas dumped dead animals and dairy waste at the source of the Walker Spring. See Declaration of Michael Vos, ¶ 9; see also Declaration of Archie Walker, ¶ 5; see also Declaration of Arthur Butler, ¶ 13. In the same vein, Michael Vos stated in his affidavit that he observed a steady flow of polluted surface runoff from the Grand View Dairy to the Walker Spring draw, which included syringes, examination gloves, mastitis tubes, and manure. See Declaration of Michael Vos, ¶¶ 5–8. These pollutants contribute to the exact kinds of aesthetic, recreational, and economic injuries alleged by IRC. Accepting these allegations as true for purposes of this motion

for summary judgment, the Court concludes that IRC has met its burden of showing an injury that is fairly traceable to the challenged action of the Bosmas.

### (3) *Injury will be Redressed by a Favorable Decision*

The final standing requirement,—redressability—examines the causal connection between the alleged injury and the judicial relief requested. *See Allen v. Wright*, 468 U.S. 737, 753 n. 19, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). In this case, IRC has prayed for both injunctive relief and civil penalties. As for injunctive relief, a plaintiff satisfies the requirement of redressability by "alleging a continuing violation or the imminence of a future violation of an applicable statute or standard." *Southwest Marine*, 236 F.3d at 995. Additionally, where a plaintiff complains of harm to water quality because a defendant exceeded its permit limits, as is the case here, it seems likely that an injunction will redress that injury, at least in part. *See Powell Duffryn*, 913 F.2d at 73. Furthermore, to establish redressability, a plaintiff "need not show that the waterway will be returned to pristine condition." *See id.* As for civil penalties, they may redress the injury suffered by a plaintiff if they will serve as a deterrent to any future polluting. *See id.*

In this case IRC alleges that the Bosmas' dairy continue to contaminate the waterways and violate their NPDES permit and the CWA. Despite, the Bosmas contention that IRC's members contribute significantly to the pollution of which they complain, an injunction against the Bosmas and their dairy operation will redress, at least in part, the injury of which the IRC complains. Additionally, the civil penalties sought by IRC will likely deter the Bosmas and other NPDES permit violators from polluting the affected waters in the future. Therefore, taking the IRC's allegations as true, the Court concludes that IRC has met its burden of showing that the injury of which it complains will be redressed by a favorable decision. Accordingly, IRC has standing to pursue this action on behalf of its membership.

### b. *Mootness*

■ The Bosmas also contend that IRC's claims are moot. It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its right to determine the legality of the practice. *Laidlaw*, 528 U.S. at 189, 120 S.Ct. 693. Accordingly, the United States Supreme Court's "standard ... for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968)). In seeking to have a case dismissed as moot, a defendant's burden "is a heavy one." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 66, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)); *see also Laidlaw*, 528 U.S. at 189, 120 S.Ct. 693.

■ The Bosmas contend that IRC's claims for civil penalties and injunctive relief are moot because there is no ongoing violation and their dairy has complied with their NPDES permit since before the date the complaint was filed. However, there exists a presumption of future injury when a defendant has voluntarily ceased illegal activity in response to litigation, even if the cessation occurs before a complaint is filed. *See Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 109, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Laidlaw* at 191, 120 S.Ct. 693. Such a pre-

sumption can be used to refute the assertion of mootness by a defendant who, when accused of present or threatened injury, ceases the complained-of activity. *Id.*

The Bosmas contention that they have not violated the CWA or their NPDES permit, without more, is simply not enough to render IRC's claims moot. While the mootness doctrine protects a defendant from a civil enforcement action under the CWA based solely on violations unconnected to any present or future wrongdoing, "it also protects plaintiffs from defendants who seek to evade sanction by predictable 'protestations of repentance and reform.'" *Gwaltney,* 484 U.S. at 67, 108 S.Ct. 376 (quoting *United States v. Oregon State Medical Society,* 343 U.S. 326, 333, 72 S.Ct. 690, 96 L.Ed. 978 (1952)). Defendants have not met their heavy burden of showing that IRC's claims are moot.

### c. Subject Matter Jurisdiction Under the CWA

On its face, the Complaint's allegations that the Bosmas have violated the Clean Water Act clearly raises a federal question. The allegations are nevertheless inadequate if the CWA does not regulate the conduct in question. If the Bosma's activities on Grand View Dairy are not regulated by the CWA, the Complaint does not raise a federal question and the action must be dismissed for lack of subject matter jurisdiction.

IRC alleges the Bosmas are violating the CWA by discharging pollutants from a point source into Butler and Walker Springs. Section 301(a) of the CWA provides that in the absence of a permit, "the discharge of any pollutant by any person shall be unlawful." 33 U.S.C.A. § 1311(a). The term "the discharge of a pollutant" is defined by § 502(12) as the "addition of any pollutant to navigable waters from a point source." 33 U.S.C. § 1362(12). Section 502(7) defines the term "navigable waters" as "waters of the United States, including territorial seas." 33 U.S.C. § 1362(7).

The parties apparently agree that the Grand View Dairy is a "point source," within the meaning of the statute.[3] However, the Bosmas hotly contest any suggestion that the dairy is discharging a pollutant into waters of the United States. IRC does not contend that the dairy discharges pollutants directly into Clover Creek or the Snake River, both of which are waters of the United States. Rather, IRC alleges that Butler and Walker Springs are themselves waters of the United States by virtue of their connection with Clover Creek.

The Ninth Circuit defines waters of the United States broadly. *Leslie Salt Co. v. Froehlke* 578 F.2d 742 (9th Cir. 1978). Though the Supreme Court has recently articulated its unwillingness to read the term "navigable" entirely out of the CWA, it also made clear that waters of the United States include at least some waters that are not navigable in the classical sense, such as non-navigable tributaries and streams. *See Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers,* 531 U.S. 159, 121 S.Ct. 675, 682, 148 L.Ed.2d 576 (2001). The Supreme Court has also upheld the EPA's broad definition of this term as including almost any body of surface water that might affect interstate commerce. *International Paper Co. v. Ouellette,* 479 U.S. 481, 486 n. 6, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987). Waters of the United States include waters that are tributary to navigable waters. 40 C.F.R. § 122.2. The

---

**3.** The EPA classifies Concentrated Animal Feeding Operations ("CAFOs") such as Grand View as point sources for purposes of the CWA.

Court has thoroughly examined the record and is satisfied that Butler and Walker Springs are sufficiently connected through surface water to Clover Creek as to fall within the definition of waters of the United States.[4]

IRC alleges that the Grand View Dairy discharges pollutants directly, through surface water connections, into Walker Spring, and indirectly, through an underground hydrological connections between natural ponds and manmade lagoons on the dairy's property, into both Walker and Butler Spring.[5] Because of the Court's determination that both springs are sufficiently connected with Clover Creek and the Snake River as to be regarded as waters of the United States, the discharge of pollutants into Walker Spring through direct surface water connections constitutes a violation of the CWA.

The more difficult issue is whether the Grand View Dairy's alleged discharge of pollutants into groundwater hydrologically connected to Butler and Walker Springs constitutes a violation of the CWA. The courts which have considered the issue generally agree that waters of the United States do not include isolated, nontributory groundwater, and that discharges of pollutants into such groundwater are not subject to CWA regulation. The courts are split, however, on the issue of whether the discharge of pollutants into groundwater which find their way into and affect the waters of the United States are subject to CWA regulation. Neither the Supreme Court nor the Ninth Circuit have directly addressed the issue. The remaining circuits are split on the issue, as are the district courts within this circuit.

One view is that Congress intended to regulate the discharge of any pollutants that could affect surface waters of the United States, whether it reaches the surface water directly or through groundwater. *See U.S. Steel Corp. v. Train,* 556 F.2d 822, 852 (7th Cir.1977); *Friends of Santa Fe County v. LAC Minerals, Inc.,* 892 F.Supp. 1333, 1357 (D.N.M.1995)(the Tenth Circuit's expansive construction of the CWA's jurisdictional reach, "foreclose any argument that the CWA does not protect groundwater with some connection to surface waters"); *Washington Wilderness Coalition v. Hecla Mining Co.,* 870 F.Supp. 983, 990 (E.D.Wa.1994); *Sierra Club v. Colorado Refining Co.,* 838 F.Supp. 1428, 1434 (D.Colo.1993)("discharge of any pollutant into 'navigable waters' includes such discharge which reaches 'navigable waters' through groundwater"); *McClellan Ecological Seepage Situation (MESS) v. Weinberger,* 707 F.Supp. 1182, 1196 (E.D.Cal.1988)(Congress intended to regulate "discharges of pollutants that could affect surface waters of the United States"). The rationale supporting this conclusion is simple and persuasive: "since the goal of the CWA is to protect the quality of surface waters, any pollutant which enters such waters, whether directly or through groundwater, is subject to regulation by NPDES permit." *Washington Wilderness Coalition,* 870 F.Supp. at 990. Stated even more simply,

---

4. Walker Spring runs into a pond, across a pasture and then into the Northside Canal, which runs into Clover Creek at some point downstream. Declaration of Michael Vos, Docket No. 95. Butler Spring discharges into Clover Creek, at least seasonally, by means of a head gate. Declaration of Marc D. Fink, Docket No. 97, Exhibit 4, Deposition of Daniel Butler 4:6–11.

5. IRC alleges, for instance, that Grand View sprays polluted irrigation water from a pivot directly into the Northside canal, which, as mentioned above, flows into Clover Creek. IRC also alleges that the Bosmas dumped dead cows and other dairy waste directly into Walker Spring.

whether pollution is introduced by a visible, above-ground conduit or enters the surface water through the aquifer matters little to the fish, waterfowl, and recreational users which are affected by the degradation of our nation's rivers and streams.

On the other hand, the Court is mindful of other decisions concluding that the CWA does not regulate the discharge of pollutants into any groundwaters, even where it ultimately affects the surface water. *See Village of Oconomowoc Lake v. Dayton Hudson Corp.*, 24 F.3d 962, (7th Cir.1994); *Town of Norfolk v. U.S. Army Corps of Engineers*, 968 F.2d 1438, 1451 (1st Cir.1992); *Umatilla Waterquality Protective Assoc., Inc. v. Smith Frozen Foods, Inc.*, 962 F.Supp. 1312, 1318 (D.Or. 1997); *Kelley v. U.S.*, 618 F.Supp. 1103, 1106 (W.D.Mich.1985). Those courts reach this conclusion based largely upon the legislative history of the CWA. They point out that Congress, in other provisions of the CWA, clearly included groundwater when they intended to do so, and that Congress considered "ground waters" to be a category of waters distinct from "navigable waters." *Umatilla*, 962 F.Supp. at 1318. They also rely upon the legislative history of the CWA, which indicates that Congress specifically chose not to regulate groundwater, largely because "the jurisdiction regarding groundwaters is so complex and varied from State to State." *Id.* (quoting from S.Rep. No. 414, 92d Cong., 1st Sess. 73 (1971), U.S.Code Cong. & Admin. News 1972, pp. 3668, 3749, reprinted in 2 Congressional Research Service of the Library of Congress, A Legislative History of the Water Pollution Control Act Amendments of 1972, 93d Cong., 1st Sess., at 1491 (Comm. Print 1973)). Finally, they attach significance to the fact that the "EPA has offered no formal or consistent interpretation of the CWA that would subject discharges to groundwater to the NPDES permitting requirement." *Id.*

■ The Court agrees that this interpretive history establishes that Congress, in enacting the Clean Water Act, concluded that it would not attempt the general regulation of discharges to groundwater. However, Congress's decision not to comprehensively regulate groundwater as part of the CWA, does not require the conclusion that Congress intended to exempt ground water from all regulation—particularly under circumstances where the introduction of pollutants into the groundwater adversely affects the adjoining surface waters. In short, the interpretive history of the CWA only supports the unremarkable proposition with which all courts agree— that the CWA does not regulate "isolated/nontributary groundwater" which has no affect on surface water. *Washington Wilderness Coalition*, 870 F.Supp. at 990. It does not suggest that Congress intended to exclude from regulation discharges into hydrologically connected groundwater which adversely affect surface water.

■ For these reasons, the Court finds that the CWA extends federal jurisdiction over groundwater that is hydrologically connected to surface waters that are themselves waters of the United States. This does not mean, however, that the plaintiff's burden is light. As Judge Van Sickle explained in *Washington Wilderness Coalition:*

> Plaintiffs must still demonstrate that pollutants from a point source affect surface waters of the United States. It is not sufficient to allege groundwater pollution, and then to assert a general hydrological connection between all waters. Rather, pollutants must be traced from their source to surface waters, in order to come within the purview of the CWA.

*Id.* Whether IRC can make this showing remains to be seen. However, the Court finds, for purposes of the Bosma's summary judgment motion, that the CWA reg-

ulates discharges from the Grand View Dairy into the groundwater where there exists a hydrological connection with Walker and/or Butler Springs, and such discharges can be traced from their source to those springs. Thus, the Court will deny the Bosma's Motion for Summary Judgment insofar as it is based on the argument that (a) the CWA does not cover groundwater discharges even where a hydrological connection exists to Walker and/or Butler Springs, or (b) that there is no genuine issue of fact as to whether such a connection exists.

#### d. *Ongoing Violation*

The CWA citizen suit provision authorizes citizens to commence civil actions against any person alleged to be in violation of the CWA, but § 505 of the CWA does not confer federal jurisdiction over citizen suits for "wholly past violations." *See Gwaltney,* 484 U.S. at 64, 108 S.Ct. 376. However, § 505 of the CWA does confer jurisdiction over citizen suits when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation, i.e., a reasonable likelihood that a past polluter will continue to pollute in the future. *See Sierra Club v. Union Oil Company of California,* 853 F.2d 667, 669 (1988). The plaintiff, however, need not prove the allegations of ongoing noncompliance before jurisdiction attaches. *See id.* Furthermore, § 505 of the CWA does not require that a defendant be in violation of the Act at the commencement of the suit; rather, it requires that a defendant be "alleged to be in violation." *Gwaltney,* 484 U.S. at 64, 108 S.Ct. 376.

"[I]t is the defendant's responsibility to challenge the truthfulness of the allegations of ongoing violations." *Sierra Club,* 853 F.2d at 669. A defendant must move for summary judgment and demonstrate that the allegations were a sham and raised no genuine issue of fact if the defendant wishes to argue that the allegations

are untrue. *See id.* In fact, after the plaintiff offers evidence to support the allegations of ongoing noncompliance, the case goes to trial if the defendant fails to convince the court that the allegations are a sham and there are no genuine issues of fact. *See id.*

In this case, IRC makes good-faith allegations regarding the Bosmas' noncompliance with the CWA and NPDES permit, and supports those allegations with sworn affidavits from a number of witnesses. Specifically, IRC alleges that the Bosmas have continued to discharge pollutants in violation of their NPDES permit and the CWA since the filing of the complaint. IRC also argues that the Bosmas past discharges indicate that future discharges are likely to recur. They further contend that the Bosmas have dumped dead animals into the Walker Spring, not as one discrete event, but on a regular basis. Finally, IRC asserts that the Bosmas have polluted the Northside Canal, which runs into Clover Creek.

The Bosmas respond that there is no evidence supporting IRC's claims. However, they have not met their burden of demonstrating that the claims are a sham and raise no genuine issue of fact. IRC has presented sufficient evidence to show that a genuine issue of material fact exists as to whether the Bosmas were violating the CWA at the time the complaint was filed and have established a reasonable likelihood that future noncompliance will recur.

#### 2. *Substantive Liability Argument*

The Bosmas next argue that the undisputed material facts do not indicate that they have violated the CWA or their NPDES permit. To establish a violation of the CWA's NPDES requirements, a plaintiff must prove that defendants (1) discharged, i.e., added (2) a pollutant (3) to

navigable waters (4) from (5) a point source. *See Committee to Save Mokelumne v. East Bay Municipal Utility District,* 13 F.3d 305, 308 (9th Cir.1993).

The Bosmas first contend that Butler and Walker Springs are not waters of the United States as defined by the CWA because they are isolated, intrastate, and non-navigable waters. However, the Court rejects that argument for the reasons stated above.

The Bosmas also contend that they have complied with their NPDES permit, which shields them from liability under the CWA. Compliance with an NPDES permit constitutes compliance with the CWA. 33 U.S.C. § 1342(k). However, questions of fact remain regarding whether the Bosmas have, in fact, complied with their NPDES permit.

### 3. *Affirmative Defenses*

#### a. *Diligent Prosecution Defense*

To prevent multiple punishment for the same CWA violation,[6] 33 U.S.C. § 1319(g)(6)(A)(iii) bars a citizens suit if the EPA or the state "has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under this subsection, or such comparable State law." *Citizens for a Better Environment–California v. Union Oil Co., of California,* 83 F.3d 1111, 1115 (9th Cir. 1996). The Bosmas argue that IRC's claims are barred by § 1319(g)(6)(A)(iii) because they settled these same claims by entering into a Stipulation, Agreement and Consent Order with the Idaho Department of Agriculture which required that they pay to a charity an amount equal to two

days of milk receipts. IRC contends that the statutory bar does not apply, because the payment was not assessed under a subsection of § 1319 or a comparable State law.[7] It is undisputed that the Idaho Department of Agriculture assessed the penalty pursuant to The Idaho Dairy Pollution Prevention Initiative Memorandum of Understanding ("MOU"), Title 37, chapter 4, Idaho Code, as well as IDAPA 02.04.14. Thus, the precise issue at hand is whether the MOU is a "comparable state law" within the meaning of the statute.

In order to qualify as "a comparable state law," the Ninth Circuit has held that the provision of state law at issue must be comparable to § 1319(g). Section 1319(g)(4) contains provisions for public notice and opportunity for interested persons to comment on the proposed sanction. That subsection also provides for public hearings before the issuance of an order. Even the precedent cited by the Bosmas recognizes that a regulation or statute, to qualify as a "comparable state law," must contain provisions for public notice and hearings. *See North and South Rivers Watershed Ass'n v. Scituate,* 949 F.2d 552, 555–56 (1st Cir.1991). Since it appears undisputed that the relevant Idaho statute lacks such provisions, the Court finds that the diligent prosecution provision of § 1319 does not shield the Bosmas from this citizen suit.

#### b. *Unclean Hands Defense*

The Bosmas also contend that since IRC seeks an equitable remedy in the form of injunctive relief, the equitable

---

**6.** 33 U.S.C. § 1319(g)(6)(A)(ii) provides that a citizen suit is barred if the EPA or state "has commenced and is diligently prosecuting an action under a State law comparable to this subsection." *Citizens for a Better Environment–California v. Union Oil Co., of California,* 83 F.3d 1111, 1115 (9th Cir.1996). However, neither the EPA nor the State of Idaho is

currently prosecuting any enforcement actions concerning IRC's claims, making the provisions of this subsection inapplicable.

**7.** IRC doesn't dispute that the Bosmas' payment constituted a penalty for purposes of the statute. In fact, the consent order explicitly refers to the payment a "penalty."

doctrine of unclean hands bars its claims. The Court is unpersuaded for two reasons. First, while some members of IRC may be guilty of the same sort of conduct that IRC attributes to the Bosmas, IRC is bringing this action on behalf of its entire membership, and not just those members whom the Bosmas accuse of violating the CWA. Moreover, the Bosmas have cited no cases which hold that a non-profit organization is barred from bringing suit to obtain equitable relief if any of the members of that organization have unclean hands.

 Second, even if there are grounds for applying the unclean hands doctrine to IRC, important public policy considerations provide strong and compelling reasons to decline to do so. Courts should not apply the unclean hands doctrine if it would frustrate the purpose of a federal statute or contravene public policy. *See United States v. Martell,* 844 F.Supp. 454, 459 (N.D.Ind.1994) (citing *Pan–American Petroleum and Transport Co. v. United States,* 273 U.S. 456, 505–506, 47 S.Ct. 416). Congress's stated purpose in adopting the CWA was to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." *Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers,* 531 U.S. 159, 121 S.Ct. 675, 680 (quoting 33 U.S.C. § 1251(a)). Allowing a defendant to escape liability for conduct which violates the CWA because one or more members of a representative plaintiff has engaged in similar violations would frustrate, at the expense of the public, the purpose of the CWA. Even if one or more members of IRC have violated the CWA, the broader public purpose requires that IRC be permitted to pursue this claim. For these reasons, the Court declines to apply the doctrine of unclean hands in this case.

In summary, the Court concludes that: (1) it does not lack subject matter jurisdiction; (2) IRC has presented dispute issues of material fact with regard to their CWA claims; and (3) the Bosmas have not established that they are entitled to summary judgment based upon their affirmative defenses. Therefore, the Court will deny the Defendants' Motion for Summary Judgment.

### B. Defendants' Motion to Strike Declarations and Exhibits

In reaching its decision in this case, the Court has only considered those declarations and exhibits which are specifically referred to in this decision. The Court has considered the objections to those declarations and exhibits and determined that the objections are not well-founded. The declarations are admissible and will not be stricken. Since the Court has not considered or relied upon any of the other declarations or exhibits to which the Bosmas object, the Court finds that the balance of the Bosmas' objections are moot.

### C. Defendants' Motion in Limine and to Strike the Testimony of Alan Gay

The Bosmas request that the Court strike the testimony of Alan Gay, one of IRC's expert witnesses. Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert testimony, was recently amended to conform to the United States Supreme Court decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). It now provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is

based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed.R.Evid. 702. The Bosmas argue that the methods Gay uses to draw his conclusions do not satisfy the test of reliability imposed by the Rule. It is true, that the trial judge is charged with the responsibility of making sure "that any and all scientific testimony or evidence is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The drafting history of the Rules, however, manifests a "liberal thrust," and their "general approach [is to] relax the traditional barriers to 'opinion' testimony." *Id.* at 589, 113 S.Ct. 2786 (quoting *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 169, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988)). The trial judge must thus make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93, 113 S.Ct. 2786. Still, "[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596, 113 S.Ct. 2786. *Kumho Tire v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) applies this same approach to "testimony based on 'technical' and 'other specialized' knowledge." Thus, although *Daubert, Kumho,* and the recent amendments to Rule 702 reflect a change in the way that the trial court must look at expert testimony, they do not necessarily impose a more restrictive test for determining when expert testimony is admissible.

■ IRC offers the testimony and report of Gay to show that wastewater from the Grand View Dairy is discharged into Faulkner Pond, where it enters the groundwater and ultimately pollutes Butler Spring. The Bosmas contend that Gay's testimony is inadmissible because his "water balance" study method is so lacking in scientific vigor that it does not meet the reliability requirements of Rule 702 or *Daubert* and its progeny. The Court disagrees.

■ *Daubert* outlines four questions which should guide a court in determining whether the reasoning or methodology underlying expert testimony is scientifically valid: (1) can and has the method been tested; (2) has the method been subjected to peer review; (3) does the method have a known or potential error rate; and (4) is the method generally accepted in the scientific community? However, the Court must ultimately employ an independent, flexible approach in order to determine whether Gay's methodology is scientifically valid. *Daubert,* 509 U.S. at 594–95, 113 S.Ct. 2786.

Gay's "water balance" study method consists of comparing the input of water into the dairy's operation against its output and its storage capacity. His research indicates that input exceeds output plus storage. From this, Gay concludes that the excess wastewater enters the Faulkner Pond, which enters the groundwater and ultimately ends up in Butler Spring. The Bosmas call into question Gay's calculated and assumed input, output, and storage amounts, and point to Gay's deposition for the assertion that Gay admits to these miscalculations and unwarranted assumptions. A review of Gay's deposition does, in fact, show that Gay appears to agree that he did make some mistakes in his "water balance" study. However, he does not concede that his methodology is scientifically invalid. The inquiry under Rule 702 must focus solely on principles and

methodology, not on the conclusions that they generate. *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786. The Bosmas' arguments relate more to Gay's conclusions, not his methodology. The Court has reviewed the challenges which the Bosmas make to Gay's methodology and concludes that they have not provided the Court with a sufficient basis to conclude that his methodology is so unreliable as to justify exclusion under Rule 702. As discussed below, the issue may be revisited during a pretrial *Daubert* hearing. However, at this time, the Court will deny the Bosmas's request that Gay's testimony be stricken and that he be precluded from testifying at trial.

### D. Defendants' Motion in Limine and to Strike the Testimony of John Monks

The Bosmas also ask the Court to strike the testimony of John Monks ("Monks"). Without mentioning Rule 702, *Daubert*, *Kumho Tire*, or any other rule, statute, case, or opinion in their brief, the Bosmas seem to argue that Monks' testimony does not meet the requirements set forth in Rule 702. The Court disagrees.

First, Monks asserts that Faulkner Pond, cattle pens, and other areas east of the main lagoon contain contaminated water, that there is a conduit between these areas and the springs, and that pollutants from Grand View reach the springs from these areas. He relies upon a photograph of Faulkner Pond, an Idaho Department of Agriculture report, his personal observations of bedrock in the area, and elevated nitrate levels at Butler Spring to support his assertions. These are sufficient facts and data to support his testimony.

Second, Monks also performed a "Phase I" investigation, which included a comprehensive review of the published scientific literature describing the geology and hydrology of the pertinent region, a review of the available data and reports regarding the Butler and Walker Springs, and a thorough site-inspection of Grand View's facilities. Since the Bosmas do not dispute that Monks is an expert, and they do not put forth any expert testimony of their own to contradict Monks' methodology, the Court finds that Monks' principles and methods are reliable. The Court therefore concludes that Monks' testimony and report are admissible under Rule 702.

The Court does, however, recognize the possible need for a full *Daubert* hearing for the purpose of fully reviewing Gay's and Monks' testimony and reports. At such a hearing, Defense may offer its own experts to testify about Gay's and Monks' methodologies. Based, however, only upon the testimony and reports, and the Bosmas' attempt to challenge that testimony and reports without the benefit of their own experts, the Court will not strike Gay's or Monks' testimony and reports at this juncture of the proceedings. Defendants' Motion in Limine and to Strike the Testimony of Alan Gay and Defendants' Motion in Limine and to Strike the Testimony of John Monks will therefore be denied.

### E. Plaintiff's Motion for Continuance

IRC requests that the trial date in this matter be continued because tests conducted by the United States Geological Survey ("USGS") may show that antibiotic and hormone contamination in the Butler and Walker Springs are tied to discharges from the Grand View Dairy. The motion for continuance is moot, since the Court, at the pretrial conference in this matter, continued the trial because counsel for both parties indicated they needed more time to prepare for trial. However, implicit in IRC's motion was a request that it be allowed to reopen discovery and submit evidence and data which may be produced by the USGS when they complete the test-

ing, which is now underway. At this point, the test results produced by the USGS are ambiguous and may provide no support for IRC's claims. For this reason, it would be premature for the the Court to take the extraordinary step of reopening discovery at this late date to permit the parties to retain experts to analyze the USGS data. For that reason, the Court will not permit discovery to be reopened at this point in time. If the USGS testing does reveal compelling evidence of a connection between discharges from the Grand View Dairy and pollutants discovered in Butler and Walker Springs, IRC may renew its request that discovery be reopened. However, the Court will only grant such a motion if the evidence is so compelling that to deny the request would result in a miscarriage of justice.

At the Pretrial Conference in this matter, the Court requested that counsel provide it with their available dates over the next 6 months. The Court has reviewed the dates provided and determined that the trial in this matter should be rescheduled to commence at **1:30 p.m.** on **December 3, 2001.** A further pretrial conference will be held at **8:30 a.m.** on **November 15, 2001.**

## IV. *ORDER*

Based on the foregoing and the Court being fully advised on the premises,

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 74) shall be, and the same is hereby DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Strike Declarations and Exhibits (Docket No. 104) shall be, and the same is hereby DENIED in part, and deemed MOOT in part.

IT IS FURTHER ORDERED that Defendants' Motion in Limine and to Strike the Testimony of Alan Gay (Docket No. 106) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion in Limine and to Strike the Testimony of John Monks (Docket No. 108) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for a Continuance of the June 11, 2001 Trial Date (Docket No. 113) is GRANTED in part and DENIED in part. The trial date is vacated and trial will commence on **December 3, 2001** at **1:30 p.m.** in Boise, Idaho. A pretrial conference will be held on **November 15, 2001** at **8:30 a.m.** The Plaintiff's request that discovery be reopened is denied.