**Bobby Joe COLVIN, Movant,**

v.

**UNITED STATES of America, Respondent.**

**Nos. ED CV 01–361–RT, ED CR 97–32–RT.**

United States District Court, C.D. California, Eastern Division.

Dec. 28, 2001.

James L. Waltz, Esq., Laguna Hills, CA, for Movant.

John S. Gordon, United States Attorney, Ronald L. Cheng, Assistant United States Attorney, Acting Chief, Criminal Division, William W. Carter, Assistant United States Attorney, Los Angeles, CA, for Respondent.

## ORDER DENYING MOVANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

TIMLIN, District Judge.

The court, Judge Robert J. Timlin, has read and considered Movant Bobby Joe Colvin ("Colvin")'s motion ("Motion") to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 ("Section 2255"), respondent United States of America ("government")'s answer, and Colvin's traverse.[1] Based on such consideration, the court concludes as follows:

## I.

### BACKGROUND

██ Between approximately July 1996 and February 1997 Colvin arranged for 5.4 million pounds of screw press rejects ("waste") to be dumped on the Lady Lu Ranch ("Lady Lu"). Lady Lu is located on the northern shoreline of the Salton Sea. Once deposited on Lady Lu, the waste was spread by Covlin, using a bulldozer, throughout Lady Lu. Some of the waste ended up in the Salton Sea.[2]

---

1. The court notes that after receiving numerous extensions, Colvin filed his traverse after November 5, 2001, the date of the latest extension granted by the court. However, the court will consider Colvin's traverse.

2. Colvin contends that there is no evidence that he discharged waste into the Salton Sea. However, the trial transcript is replete with references to his having spread the waste to the shoreline of the Salton Sea, including into the Sea. *See, e.g.,* Trial Transcript, at pp. 341–42, 358–59, 362, 365, 387, 397, 401, 465. Page 465 of the Trial Transcript is such an example:

> Prosecutor: "[Colvin] said he was going to put [telephone polls] in to keep the [waste] from being washed out to sea?"
> FBI Special Agent Melinda Long: "That's correct."
> Prosecutor: "But…"
> Long: "But it was too late."

On September 9, 1997 Colvin was charged in a one-count indictment with discharging pollutants into navigable waters of the United States without a permit, in violation of the Clean Water Act, 33 U.S.C. § 1319(c)(2)(A) ("CWA"). At the end of a five-day jury trial, the court read the following jury instructions, in pertinent part:

- In order for the defendant[ ] to be found guilty ... the government must prove each of the following beyond a reasonable doubt:

 First, the defendant[ ] knowingly discharged a pollutant;

 Second, the pollutant was discharged from a point source;

 Third, the pollutant entered waters of the United States; and

 Fourth, the discharge was unpermitted.

- The term "point source" is defined in the Clean Water Act to mean "any discernable, confined, and discreet conveyance, including but not limited to any ... container ... or vessel ... from which pollutants are or may be discharged." Trucks and bulldozers which discharge pollutants are point sources.

- In order for the Salton Sea to constitute a water of the United States, as defined by the Clean Water Act, you must find beyond a reasonable doubt any one of the following:

 (1) That the Salton Sea is used by interstate or foreign travelers for recreational or other purposes; or

 (2) That the Salton Sea may provide a habitat for migratory birds or endangered species.

The jury convicted Colvin on May 21, 1999. However, the jury did not use a special verdict form to record the basis on which it found that the Salton Sea was a "water of the United States."

The conviction was affirmed by the United States Court of Appeals for the Ninth Circuit on March 12, 2001.

## II.

### *ANALYSIS* [3]

Colvin argues all of the following: Colvin did not discharge nonhazardous solid waste ("waste"), as pollutants, into the Salton Sea,[4] the Salton Sea is not a "navigable water" under the CWA, Lady Lu is not a "wetland" under the CWA, and a bulldozer is not a "point source" under the CWA. The gist of Colvin's arguments is that there is no federal jurisdiction over the Salton Sea under the CWA, and, therefore, the CWA does not prohibit the conduct for which he was convicted. The government also responds to an issue not raised by Colvin, namely that the jury's lack of specificity regarding the basis for its finding that the Salton Sea constitutes a "water of the United States" does not provide a basis for granting Colvin's Motion.

### A. Legal Standard Governing Section 2255 Petitions

■ Colvin's claims are asserted for the first time on collateral review. "Where a

---

It is irrelevant whether Colvin dumped the waste into the middle of the Sea or placed the waste in contact with the Sea at the shoreline, knowing that the tides would transport the waste out to sea.

3. Per Rule 8, Rules Governing § 2255 Proceedings, the court concludes that, upon review of the entire record, disposition without an evidentiary hearing is appropriate. Colvin

has not alleged any facts outside of the record in support of his Motion that would necessitate a hearing. *See Doganiere v. United States,* 914 F.2d 165, 168 (9th Cir.1990)

4. The court has addressed this issue above, concluding that Colvin did discharge waste into the Salton Sea.

defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 2643–44, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977), or that he is 'actually innocent,' *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649–50; *Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 2667–68, 91 L.Ed.2d 434 (1986)." *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998).

 Colvin does not state explicitly whether his Motion is based on "cause and prejudice" or "actual innocence," but his arguments-that the CWA does not prohibit his actions-attempt to establish actual innocence. "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Id.* at 623, 118 S.Ct. at 1611 (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28, 115 S.Ct. 851, 867–68, 130 L.Ed.2d 808 (1995)). Actual innocence entails more than "legal insufficiency;" it requires "factual innocence." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518–19, 120 L.Ed.2d 269 (1992)). Moreover, the claim of actual innocence must be based solely on reliable evidence not presented at trial. *See Calderon v. Thompson*, 523 U.S. 538, 559, 118 S.Ct. 1489, 1503, 140 L.Ed.2d 728 (1998) (commenting that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation omitted).

**B. CWA Prohibits Colvin's Conduct**

The evidence not presented at trial that Colvin submits in support of his Motion is a Supreme Court decision, *Solid Waste Agency of Northern Cook County v. Army Corps of Eng'r*, 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001) ("SWANCC"), that was decided after he was convicted. According to Colvin, *SWANCC* invalidates the basis for his conviction.

1. *SWANCC*

A brief review of CWA jurisprudence is necessary in order to understand the import of *SWANCC* and its effect on Colvin's underlying conviction. The CWA, also known as the Federal Water Pollution Control Act, 86 Stat. 816, as amended, 33 U.S.C. § 1251 et seq., prohibits the unpermitted discharge of a pollutant from a point source into a water of the United States.

The United States Army Corps of Engineers ("Corps"), to which Congress has delegated the responsibility of "protecting the quality of our Nation's waters" by, inter alia, promulgating regulations under the CWA, *see SWANCC*, 531 U.S. at 175–76, 121 S.Ct. at 684–85 (Stevens, J., dissenting), has accorded various interpretations to "water of the United States," or "navigable waters." *See, e.g., id.* at 163, 121 S.Ct. at 678; *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 123–24, 106 S.Ct. 455, 455–56, 88 L.Ed.2d 419 (1985). "Navigable waters" has included, inter alia, "waters such as intrastate lakes, rivers, streams ... mudflats, sandflats ... playa lakes, or natural ponds, the use, degradation or destruction of which could affect interstate or foreign commerce ...." 33 C.F.R. § 328.3(a)(3) (1999). In 1986, the Corps enacted the "Migratory Bird Rule." *See SWANCC*, 531 U.S. at 164, 121 S.Ct. at 678. Attempting to "clarify the reach of its jurisdiction, the Corps stated that [Section 404(a) of the CWA] extends to intrastate waters [w]hich are or would be used as habitat by birds protected by Migratory Bird Treaties; or

[w]hich are or would be used as habitat by other migratory birds which cross state lines; or [w]hich are or would be used as habitat for endangered species .... " *Id.* (citing 51 Fed.Reg. 41217).

The *SWANCC* Court reviewed the authority of the Corps to promulgate the Migratory Bird Rule. *See id.* It held that the Corps' construing the term "navigable waters" to include isolated, non-navigable intrastate waters used as a habitat by migratory birds as an independent basis to assert jurisdiction under the CWA exceeded the authority granted to it under the CWA. *See id.* at 174, 121 S.Ct. at 684. However, the *SWANCC* Court did not invalidate other Corps interpretations (i.e., non-Migratory Bird Rule interpretations) of navigable waters, including all traditional navigable waters, all interstate waters, all tributaries to navigable or interstate waters, all wetlands adjacent to any and all of such waters, and all waters that are subject to the ebb and flow of the tide.[5] *See, e.g., Headwaters, Inc. v. Talent Irrigation Dist.,* 243 F.3d 526, 533 (9th Cir. 2001) (post-*SWANCC* decision stating that *SWANCC* merely invalidated the Corps' Migratory Bird Rule, and did not call into question federal jurisdiction over waters that are "navigable-in-fact" or open waters that flow into interstate waters); *Idaho Rural Council v. Bosma,* 143 F.Supp.2d 1169, 1178 (D.Idaho 2001) (post-*SWANCC* decision commenting that "[t]he Ninth Circuit defines waters of the United States broadly" and that, even after *SWANCC,* "waters of the United States include at least some waters that are not navigable in the classical sense, such as non-navigable

tributaries and streams"); *United States v. Buday,* 138 F.Supp.2d 1282, 1288 (D.Mont. 2001) (post-*SWANCC* decision that assumes that federal courts still have jurisdiction over traditional navigable waters, interstate waters, and navigable-in-fact waters). *See generally SWANCC,* 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed.2d 576.

### 2. *Salton Sea* [6]

■ The trial record reflects that the Salton Sea is a popular destination for out-of-state and foreign tourists, who fish and recreate in and on its waters and shoreline. Some tourists visit the Salton Sea for medicinal purposes, believing its water is good for their skin. Other international and domestic visitors frequent the Salton Sea to water ski, fish, hunt ducks, and race boats and jet skis on the Sea. Many Canadian tourists frequent the Sea in the winter, while many others use it in the summer. The record further shows that the Sea ebbs and flows with the tide. Under most any meaning of the term, the Salton Sea is a body of "navigable water" and "water of the United States."

Thus, even after *SWANCC,* the CWA authorizes federal jurisdiction over illegal discharges into the Salton Sea. *See, e.g., Idaho Rural Council,* 143 F.Supp.2d at 1178 (CWA, even post-*SWANCC,* regulates inter alia, discharges into "navigable-in-fact" waters). Therefore, as Colvin illegally discharged waste into the Salton Sea, *SWANCC* does not establish that Colvin is "actually innocent" of the crime for which he was convicted.[7]

---

5. For example, 33 C.F.R. 328.3(a)(1) (2001) provides: "The term 'waters of the United States' ... [includes] all waters which are subject to the ebb and flow of the tide."

6. The Salton Sea is a misnomer. It is actually a lake, not a sea.

7. Colvin's argument that Lady Lu is not a "wetland" is thus irrelevant for purposes of this Motion, as the germane "water of the United States" is the Salton Sea.

### 3. *Point Source*

■■ Colvin has proffered no new evidence regarding his contention that the bulldozer with which he spread the waste into the Salton Sea was not a "point source" under the CWA. As such, he is barred from bringing such a claim. *See Calderon*, 523 U.S. at 559, 118 S.Ct. at 1503. Regardless, it is well established that bulldozers and similar vehicles may be "point sources" under the CWA when they are, as here, utilized to spread waste. *See, e.g., Borden Ranch P'ship v. United States Army Corps of Eng'r*, 261 F.3d 810, 815 (9th Cir.2001) (holding that bulldozers and tractors used to pull waste through soil were "point sources" and commenting that the definition of "point source" is "extremely broad"). *See generally* 33 U.S.C. § 1362(14) (2001) (including in its definition of "point source" "any ... vessel ... from which pollutants are or may be discharged").

### C. Jury's Finding That Salton Sea Constitutes A "Water of the United States" Under CWA

■ The government originates Colvin's most promising issue. That is, the jury not having used a special verdict form leaves open the possibility that it based its finding that the Salton Sea was a "water of the United States" on the fact that it provided "a habitat for migratory birds." Such a basis, as discussed above, has since been repudiated by *SWANCC*.

The government's response is that Colvin has not shown cause for not raising the issue on direct appeal. Colvin could have, the government contends, argued that the instruction was deficient, even though the instruction-in particular, the migratory bird provision-represented valid Ninth Circuit jurisprudence at the time of Colvin's conviction. *See, e.g., Leslie Salt Co. v. United States*, 896 F.2d 354, 360 (9th Cir.

1990) (holding that "the Clean Water Act[ ] is broad enough to extend the Corps' jurisdiction to local waters which may provide habitat to migratory birds and endangered species"). It is unfair, though, always to require defendants to argue on appeal that well-established Ninth Circuit precedent should be overturned in order to preserve the possibility of raising a challenge to a jury verdict in a Section 2255 motion based on a Supreme Court opinion that was filed after direct appeal was concluded.

However, Colvin has not proved he was prejudiced by his failing to raise this argument on direct appeal. The first of the two disjunctive elements of the jury instruction concerning whether the Salton Sea is a "water of the United States" was that "the Salton Sea is used by interstate or foreign travelers for recreational or other purposes." The Salton Sea, as discussed above, is a popular destination for interstate and international tourists seeking to participate in recreational activities on the Sea. Therefore, even if Colvin could have demonstrated "cause" for not having raised the issue of a faulty jury instruction on direct appeal, he could not have shown prejudice. The first element of the "water of the United States" test was clearly supported by substantial credible evidence, and any reasonable juror would have found that Colvin dumped waste into a water of the United States, namely the Salton Sea.

### III.

### *DISPOSITION*

ACCORDINGLY, IT IS ORDERED THAT: Colvin's Motion is DENIED.